## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

DWAINE WRIGHT,                          :

             Petitioner,         :      Case No. 3:10cv174
                                       Case No. 3:04cr003

    vs.                                 :

                                     District Judge Thomas M. Rose
UNITED STATES OF AMERICA,         :      Magistrate Judge Sharon L. Ovington

             Respondent.         :

## REPORT and RECOMMENDATIONS[1] AND ORDER

      This matter is before the Court on *pro se* Petitioner Dwaine Wright's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct sentence, together with supporting affidavits (Case No. 3:04cr003, Doc. #145);[2] Respondent's opposing memorandum and motion to dismiss Petitioner's action, together with supporting affidavits (Doc. #152); Petitioner's reply, together with exhibits (Doc. #154); and the record as a whole. Petitioner also requests an evidentiary hearing "to allow him to develop his . . . issues on the record." (Doc. #154 at 1; *see also*

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

[2]Although not expressly stated, all further docket references will be to the docket number assigned in the underlying <u>criminal</u> case.

Doc. #145, Exh. 1 at 3).

Based on a thorough review of the parties' arguments, the proffered affidavits and exhibits, and the record, this Court concludes that an evidentiary hearing is warranted as to one narrow issue that involves conflicting factual assertions as to the performance of Wright's trial counsel. *See infra.* Accordingly, the Court recommends that an evidentiary hearing be held, limited to resolving that single contested issue of fact. As to the remainder of Wright's arguments, however, the Court determines that such matters can be decided on the existing record, and thus finds an evidentiary hearing to be unnecessary as to those issues.

**FACTS, PROCEDURAL HISTORY & THE PARTIES' CLAIMS**

On January 13, 2004, Petitioner Dwaine[3] Wright was indicted in this Court for possession of a firearm by convicted felon, in violation of 18 U.S.C. § 922(g)(1). (Doc. #2). According to the United States Court of Appeals for the Sixth Circuit, the facts underlying that charge are as follows:

---

[3]Although the "e" is consistently omitted from Petitioner's first name as typed in his original Section 2255 filings (*i.e.*, "Dwain" rather than "Dwaine") (*see* Doc. #145 at 1, 9, 10, Exh. 1 at 1-4), the indictment and judgment against him in this Court, as well as the state court cases against him, all appear to use the latter spelling of "Dwaine." (*See* Doc. ## 2, 126; *see also, e.g., State v. Wright*, Nos. 23330, 23403, 23404, 23521, 2010 WL 1731789 (Ohio Ct. App. Apr. 30, 2010)). Additionally, Petitioner appears to have <u>signed</u> his first name with an "e" included (*see* Doc. #145 at 9, 10, Exh. 1 at 3, 4; Doc. #154 at 25) in all the documents filed in this action, and the "Dwaine" spelling also is employed throughout his reply memorandum. (*See* Doc. #154). For the sake of consistency, "Dwaine" also is the spelling adopted herein.

Wright, a convicted felon, signed a parole agreement that required him to report to Officer Scott Donley of the Ohio Adult Parole Authority.  The agreement mandated that Wright provide a current address, complete substance-abuse training, abide by the law, and notify Donley of any address change or contact with law enforcement.  Wright also agreed:

> [T]o a search, without warrant, of my person, my motor vehicle or my place of residence by a supervising officer or other authorized representative of the Department of Rehabilitation and Correction at any time.  Notice: Pursuant to Section 2967.131 of the Revised Code, officers of the Adult Parole Authority may conduct warrantless searches of your person, place of residence, personal property or any property that you have been given to use if they have reasonable grounds to believe that you are not abiding by the law or terms and conditions of your supervision.

On July 31, 2003, Officer Donley discovered that Wright had failed to disclose several outstanding warrants – a clear violation of his parole.  Wright likewise failed to complete substance-abuse counseling and did not submit the required urine tests.  Concluding that Wright violated his parole, Donley obtained an arrest warrant and went to 474 Kilmer Street – the address Wright provided – with several officers.  They found Wright on the front porch with another convicted felon, Rodney Chambers.

Donley arrested Wright and searched the residence pursuant to the parole agreement and Ohio Revised Code § 2967.131(C), which permits officers to:

> [S]earch, with or without a warrant, the person of the individual or felon, the place of residence . . . if the field officers have reasonable grounds to believe that the individual or felon . . . is not abiding by the law, or otherwise is not complying with the terms and conditions of . . . parole . . .

*-3-*

> Wright at first objected to the search – claiming that he sub-leased
> the residence to Chambers – but later admitted that he was the
> lawful tenant.  Notwithstanding the objection, Donley entered the
> home and searched the front bedroom.  The search uncovered
> abundant evidence that Wright lived in the room, including a utility
> bill, social security check, and other items bearing Wright's name.
> Donley also discovered a loaded pistol bearing Wright's fingerprint
> in the dresser.

*United States v. Wright*, 332 F. App'x 257, 258-59 (6th Cir.), *cert. denied*, ___ U.S. ___,

130 S. Ct. 306 (2009).

Assistant Federal Public Defender Thomas W. Anderson, Jr. represented

Wright for purposes of trial.  According to Anderson's affidavit (Doc. #152, Exh.

1), prior to trial, the United States offered Wright a plea to a 10 year sentence,

which Wright rejected.  (*See id.* at ¶6).  Wright's affidavit, however, avers that he

"told Mr. Anderson that I wanted to plead guilty and accept the ten (10) years

from the government," but "Anderson ignored me."  (Doc. #145, Exh. 1 at 1).  In

either event, the case thereafter proceeded to a jury trial before United States

District Judge Thomas M. Rose, where Anderson's stipulations "to each element

of § 922(g)(1) except possession," *Wright*, 332 F. App'x at 259 – *i.e.*, that Wright

had "a prior felony conviction and also . . . that the firearm was operable [and]

had traveled in interstate commerce" (*see* Doc. #152, Exh. 1 at ¶8) – were read to

the jury.  (*See also* Doc. #45; Doc. #96 at 19-22).

To prove the sole remaining element of the offense – possession – the

United States presented testimony that Wright's fingerprint had been found on the subject gun. (Doc. #97 at 41-52, 63-71, 73-88). On behalf of the defense, attorney Anderson subpoenaed Rodney Chambers, Wright's purported sub-lessee, as a witness expected to testify that the gun was his. (*See* Doc. #98 at 2-4; *see also* Doc. #152, Exh. 1 at ¶¶6=7). Chambers, however, ultimately refused to testify, invoking his Fifth Amendment right against self-incrimination. (*See* Doc. #98 at 2-4, 25; *see also* Doc. #152, Exh. 1 at ¶¶6=7, 9). Anderson then moved to have Chambers deemed "unavailable" so that hearsay evidence of Chambers' previous admissions regarding possession of the gun could be admitted in lieu of his testimony. (*See* Doc. #98 at 4-20; *see also* Doc. #152, Exh. 1 at ¶9). Judge Rose granted that motion, but limited the defense to reading into the trial record a portion of one of Chambers' prior affidavits indicating that Chambers, not Wright, had been in possession of the pistol in question. (*See* Doc. #98 at 20-22, 26-28; *see also* Doc. #152, Exh. 1 at ¶9).

On May 26, 2005, the jury returned a verdict of guilty against Wright. (*See* Doc. #51). After the verdict but prior to sentencing, Wright filed various *pro se* motions (*see, e.g.,* Doc. ##53, 57, 58, 61, 62, 65, 66, 70, 72, 74, 76), including one for new counsel. (*See* Doc. #55). On September 2, 2005, the district court appointed attorney Gary W. Crim to represent Wright going forward. (Doc. #64; *see also*

Doc. #152, Exh. 2).  Subsequently, in light of Wright's five prior convictions for crimes of violence, Judge Rose determined that Wright qualified as "an armed career offender" under  18 U.S.C. § 924(e).  (Doc. #128 at 2).  With that enhancement, on July 26, 2007, Wright was sentenced to 220 months imprisonment.  (*See* Doc. ##125, 126).

Judge Rose denied attorney Crim's subsequent motion to reconsider the judgment against Wright.  *United States v. Wright*, No. CR-3-04-003, 2007 WL 3125305 (S.D. Ohio Oct. 23, 2007); (*see* Doc. ##129, 130).  On October 26, 2007, Crim filed a notice of appeal on Wright's behalf.  (Doc. #131).  Crim thereafter withdrew, and the Sixth Circuit Court of Appeals appointed Salvatore C. Adamo to represent Wright on appeal.  (*See* Doc. #133).  Before that Court, Wright raised five challenges to his conviction and sentence:

> (1) the denial of his motion to suppress the firearm; (2) the denial of his motion for acquittal; (3) the court's refusal to give a requested jury instruction; (4) the denial of provisional sentencing; and (5) the reasonableness of his sentence.

*Wright*, 332 F. App'x at 258.  The Sixth Circuit Court of Appeals affirmed the trial court's decision on June 4, 2009.  *Id.*  On October 5, 2009, the United States Supreme Court denied Wright's petition for writ of certiori.  *United States v. Wright*, ___ U.S. ___, 130 S. Ct. 306 (2009).

On April 28, 2010, Wright filed the instant Section 2255 motion in this

Court.  (Doc. #145).  He sets forth three grounds for relief, as follows:

> Claim I: Trial Counsel, Tom Anderson, rendered Ineffective
> Assistance in Pretrial and Trial stages of the proceedings, in violation
> of [Wright's] Fifth and Sixth Amendment Rights, and failed to give
> the representation guaranteed by the United States Constitution.
>
> > Supporting facts: Trial Counsel failed to assist [Wright]
> > in obtaining a Plea Agreement; Trial Counsel failed to
> > investigate and present [evidence of Wright's] Mental
> > Disease; Trial Counsel failed to present exculpatory
> > fingerprint evidence and expert-testimony; Trial
> > Counsel, without [Wright]'s consent or prior knowledge
> > or agreement, stipulated to two (2) of the three (3)
> > elements that the government needed [to prove in
> > order] to convict [Wright] of the offense.
>
> Claim I [continued]: Trial Counsel, Tom Anderson, rendered
> Ineffective Assistance of Counsel in Pretrial and Trial stages of the
> proceedings when he failed to call three (3) key witnesses which
> would have brought about the exoneration of [Wright] and
> definitely changed the outcome of the proceedings.
>
> > Supporting facts: Trial Counsel, Tom Anderson, failed
> > to call two (2) key witnesses to testify at trial.  Clint
> > Akers, an investigator from the Dayton Federal Public
> > Defenders Office, interviewed a Mr. Rodney Chambers,
> > and in that interview, Mr. Chambers confessed and
> > admitted that the gun involved in this case was his and
> > not [Wright]'s.  Mr. Chambers also admitted ownership
> > and sole possession of this gun to an investigator from
> > the Columbus, Ohio Public Defenders Office.  (The
> > name of this investigator will be supplied at a future
> > date).
>
> > Mr. Chambers did testify at trial, but he exercised his

right under the Fifth Amendment not to incriminate himself, in other words[,] Mr. Chambers "took the Fifth."  However, had Trial Counsel call[ed] the two (2) investigators to testify to Mr. Chambers['] admission, and/or confession, it would have totally exonerated [Wright].

Claim II: Sentencing Phase Counsel, Gray Crim, rendered Ineffective Assistance throughout the Sentencing Phase of the proceeding due to a se[ ]vere Conflict of Interest, in violation of [Wright]'s Fifth and Sixth Amendment Rights.

> Supporting Facts: Prosecuting Attorney, Robert Bartlemay, informed Counsel for {Wright], Gray Crim, that he (Gray Crim) had a severe Conflict of Interest, in that Crim had previously prosecuted [Wright] on one of the cases the government was using to apply the Armed Career Crim[i]nal Enhancement to [Wright], and that Crim should withdraw from the case or have [Wright] sign a release or waiver[.] Crim did neither, but stayed on the case in the face of this Conflict.

Claim III: Appellate Counsel rendered Ineffective Assistance of Counsel at the Appeal Stage of the Proceedings by failing to raise significant an[d] obvious issues which were more like[ly] to bring about reversal or remand, in violation of [Wright]'s Fifth and Sixth Amendment Rights.

> Supporting facts: Appellate Counsel, Salvatore C. Adamo, failed to raise the significant of [sic] obvious issues of Tom Anderson's Ineffectiveness as Trial Counsel, and Gray Crim's Ineffectiveness at the Sentencing Phase due to the severe Conflict of Interest. Additionally, Appellate Counsel failed to communicate with [Wright] or raise any of the significant and obvious issues he was instructed, by [Wright,] to raise on Appeal.

(*Id.* at 4-6, 8) (parentheticals in original; bracketed material added).  Additionally,

Wright proffers two of his own affidavits in support of that motion.  (Doc. #145,

Exh. 1 at 1-3, 4).  Including among the averments contained in those affidavits is

the following:

> I, Dwain Wright, was the victim of Ineffective
> Assistance of Trial Counsel by Tom Anderson, Attorney
> At Law, when he failed to initiate and/or participate in
> plea negotiations, even after being instructed by the
> Trial Court and requested by Myself to do so.  Anderson
> refused to initiate, participate [in] or even consider a
> Plea Agreement and insisted he could win the case.  I
> told Mr. Anderson that I wanted to plead guilty and
> accept the ten (10) years from the government, be [sic]
> Anderson ignored me and disregarded the Court[']s
> instructions, lost the trial and caused me to receive a
> much high[er] sentence.

(*Id.* at 1).  Wright also requests an evidentiary hearing.  (*Id.* at 3).

On July 19, 2010, the United States filed its response in opposition to

Wright's Section 2255 motion, including its own motion to dismiss Wright's

motion.  (Doc. #152).  Respondent argues that Wright's trial counsel did not

provide constitutionally deficient representation by virtue of failing to present

cumulative evidence about Chambers' alleged possession of the gun in question;

failing to convey a plea offer that was a legal nullity; failing to introduce an

inapposite mental disease defense; stipulating to elements of the crime that were

irrelevant to the defense theory; or failing to counter the prosecution's fingerprint

evidence. (Doc. #152 at 3-10). In addition, Respondent contends that Wright's sentencing counsel did not render ineffective assistance where Wright has not shown that such counsel's alleged conflict of interest affected the sentence Wright received. (*Id.* at 10-11). Finally, Respondent urges that Wright cannot demonstrate that his appellate counsel was ineffective for failing to raise unspecified, unavailable and/or meritless claims on appeal. (*Id.* at 11-12). Respondent offers affidavits from Wright's trial, sentencing and appellate attorneys in support of its arguments. (*See* Doc. #152, Exhs. 1, 2, 3). Respondent thus asks that Wright's Section 2255 motion be dismissed in its entirety. (Doc. #152 at 12).

On September 1, 2010, Wright filed a *pro se* reply to the United States' opposing memorandum and motion to dismiss. (Doc. #154). After reiterating his request for an evidentiary hearing (*id.* at 3-5), Wright urges that "the jury may have lent more creditability [sic] to Mr. Chamber's Affidavit" (*id.* at 5) had his trial attorney called two investigators as witnesses to corroborate Chambers' admission to possessing the gun. (*Id.* at 5). Wright next claims that the United States had discretion not to seek a sentencing enhancement, meaning that his criminal history did not nullify the government's 10 year plea offer and his trial counsel "was ineffective for failing to convey the plea offer to his client." (*Id.* at

10).  Attaching exhibits related to his mental health history, Wright also suggests that trial counsel performed deficiently by failing to argue that Wright's mental condition diminished his ability both to understand the consequences of Chambers' possession of a firearm and to assist in his own defense.  (*Id.* at 11-14).  Next, Wright urges that his silence regarding trial counsel's stipulations to elements of the offense did not signify his consent thereto, and that exploring those elements might have averted the "armed career criminal" finding.  (*Id.* at 15-17)  In his final assertion as to his trial counsel, Wright claims that an evidentiary hearing is necessary to determine whether a fingerprint expert could have controverted the fingerprint evidence against Wright.  (*Id.* at 17-20).  Wright then essentially repeats his arguments alleging ineffective assistance of sentencing and appellate counsel.  (*Id.* at 20-25).

This matter now is ripe for decision.

## APPLICABLE LAW

### 28 U.S.C. § 2255

A federal prisoner who claims that his sentence was imposed in violation of the Constitution or laws of the United States or "is otherwise subject to collateral attack" may move the sentencing court to vacate, set aside or correct his sentence.  28 U.S.C. § 2255(a).  A one year limitations period applies to such

actions. 28 U.S.C. § 2255(f). Unless the record "conclusively show[s] that the prisoner is entitled to no relief," the court is to hold a hearing, determine the issues, and make findings of fact and conclusions of law. 28 U.S.C. § 2255(b).

If a Section 2255 motion is not dismissed, "the judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted . . . to determine whether an evidentiary hearing is warranted." Rules Governing § 2255 Proceedings, Rule 5(a); *see also Ross v. United States*, 339 F.3d 483, 490-91 (6th Cir. 2003). Where a factual dispute exists, "the habeas court <u>must</u> hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (emphasis added) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)), *cert. denied*, 552 U.S. 1217 (2008); *see also Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) ("An evidentiary hearing is required unless the record conclusively shows that the petitioner is entitled to no relief.").

"[T]he burden on the petitioner in a *habeas* case for establishing an entitlement to an evidentiary hearing is relatively light." *Valentine*, 488 F.3d at 333 (citing *Turner, supra*); *see also Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003). However, the district court need not conduct an extensive evidentiary hearing in every instance. *See Wright v. United States*, 320 F. App'x 421, 427 (6th

Cir. 2009). "Rather, the hearing conducted by the court, if any, must be tailored to the specific needs of the case, with due regard for the origin and complexity of the issues of fact and the thoroughness of the record on which (or perhaps, against which) the section 2255 motion is made." *Id.* (parenthetical in original) (citing *Smith*, 348 F.3d at 550-51). Accordingly, the reviewing court is to determine what material issues of fact require resolution via an evidentiary hearing.

In most Section 2255 proceedings, "the court may appoint counsel" to represent the petitioner. 28 U.S.C. § 2255(g). "If an evidentiary hearing is warranted," however, "the judge <u>must</u> appoint an attorney to represent a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A." Rules Governing § 2255 Proceedings, Rule 5(c) (emphasis added). Any hearing determined to be necessary shall be held "as soon as practicable after giving the attorneys adequate time to investigate and prepare." *Id.*

### <u>Right to Effective Assistance of Counsel</u>

The "Assistance of Counsel" guaranteed by the Sixth Amendment presumes that a criminal defendant has "the right to the <u>effective</u> assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (emphasis added) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). To establish a

claim of ineffective assistance of trial counsel, a criminal defendant must make a

two-part showing:

> First, the defendant must show that counsel's
> performance was deficient. This requires showing that
> counsel made errors so serious that counsel was not
> functioning as the 'counsel' guaranteed the defendant
> by the Sixth Amendment. Second, the defendant must
> show that the deficient performance prejudiced the
> defense. This requires showing that counsel's errors
> were so serious as to deprive the defendant of a fair
> trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687; *see also O'Hara v. Brigano*, 499 F.3d 492, 505 (6th Cir.

2007). To satisfy the prejudice prong, a defendant "must show that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Overall, the constitutional standard for adequate representation is "an

objective standard of reasonableness" in line with "prevailing professional

norms." *Strickland*, 466 U.S. at 687-88. Counsel's performance also should be

evaluated in light of the totality of the circumstances. *See id.* at 690; *Mason v.

Mitchell*, 320 F.3d 604, 618 (6th Cir. 2003).

The *Strickland* standard applies not only to counsel's performance during

trial, but also in the context of representation provided during plea hearings,

with the second prong focusing on "whether counsel's constitutionally

ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *see Dando v. Yukins*, 461 F.3d 791, 798 (6th Cir. 2006). With respect to claimed deficiencies in representation as to a criminal defendant's sentence, the same *Strickland* factors apply: *i.e.*, the petitioner must show both that his counsel's performance fell below an objective standard of reasonableness, and that absent such shortcoming, the outcome likely would have been different. *See Glover v. United States*, 531 U.S. 198, 204 (2001); *Green v. United States*, 65 F.3d 546 (6th Cir. 1995), *cert. denied*, 516 U.S. 1098 (1996).

A defendant's failure to satisfy either prong of the *Strickland* test obviates the need for the court to consider the other prong. *See Strickland*, 466 U.S. at 697; *see also Stanford v. Parker*, 266 F.3d 442, 454 (6th Cir. 2001), *cert. denied*, 537 U.S. 831 (2002).

## ANALYSIS

### Ineffective Assistance Claim re Trial Counsel Anderson

*a) Stipulation to crime elements without Wright's consent*

Wright contends that his Sixth Amendment right to the effective assistance

of counsel was violated when his trial attorney, without Wright's consent, stipulated to all but one of the elements of the "felon with possession" offense on which Wright was tried.  (Doc. #145 at 5, Exh. 1 at 2; Doc. #154 at 15-17).  Significantly, however, Wright never challenges the prosecution's ability to have proven the elements as to which the stipulations were made (*see id.*) - *i.e.*, that Wright had a prior felony conviction, and that the gun in question was operable and was manufactured outside of Ohio but discovered in Ohio.  (*See* Doc. #96 at 19-22).  Because this aspect of Wright's argument rests exclusively on his trial counsel's agreement to a stipulation that appears in the record, the Court finds that no evidentiary hearing is necessary in order to resolve this claim of ineffectiveness.  *See United States v. Monghan*, No. 09-5226, 2011 WL 310704, at \*5 (6th Cir. Feb. 1, 2011), *petition for cert. filed*, (Apr. 29, 2011) (No. 10-10308).

To establish ineffective assistance of counsel, a criminal defendant must be able to show that he was prejudiced by his counsel's errors.  *Strickland*, 466 U.S. at 694.  Here, even assuming that trial counsel did stipulate without Wright's consent and without advising him of the consequences of the stipulations, Wright cannot demonstrate that the outcome of his trial would have been different had his trial counsel not entered into those stipulations.  Wright does not deny that he was a convicted felon, and the record makes clear that Wright had not just one

prior felony conviction, but several. Had defense counsel insisted that the government prove the existence of Wright's prior convictions rather stipulating to his convicted felon status, the jury would have heard potentially more damaging evidence about the nature of Wright's earlier crimes. Indeed, in recognizing "that factual stipulations to elements of a crime are often the product of a sound trial strategy," the Sixth Circuit recently referred to instances "where a prior felony conviction is an element of the offense" as an example of when "stipulat[ing] to the existence of the conviction rather than allow[ing] the jury to hear details about the earlier crime" may be "a sound strategy." *Monghan*, 2011 WL 310704, at *5 (citing, *inter alia*, *Old Chief v. United States*, 519 U.S. 172, 185 (1997) ("[T]here can be no question that evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant.")). Wright's trial counsel employed a sound strategy in stipulating to Wright's status as a prior felon, and this Court finds that decision was neither erroneous nor prejudicial. *See Strickland*, 466 U.S. at 694.

Wright also offers no suggestion as to how he was prejudiced by trial counsel's stipulation that the gun at issue was an operable firearm that had traveled in interstate commerce. Wright identifies no evidence contrary to that stipulation. Moreover, numerous cases either explicitly or implicitly have

recognized "possession" to be the "most critical" element of the "felon in possession of a firearm" offense. *See, e.g., Monghan*, 2011 WL 310704, at **4-5; *United State v. Muse*, 83 F.3d 672, 681 (4th Cir.), *cert. denied*, 519 U.S. 904 (1996). Where, as here, that critical element was "vigorously contested" at trial, a defendant "can not overcome the presumption" that stipulation to the other, less-critical elements was consistent with a sound trial strategy. *See Monghan*, 2011 WL 310704, at *5.

In his reply, Wright attempts to raise the specter of prejudice by implying that his trial counsel should have "ascertain[ed] if the alleged convictions qualified as criminal convictions suitable for use according to the Career Offender Statute" before entering into the stipulation presented at trial. (*See* Doc. #154 at 16). That allusion, however, misses the mark. As the trial transcript plainly reflects, with regard to Wright's prior felon status, the text of the stipulation to which Wright's trial attorney agreed provided only as follows, in its entirety:

> Prior to or on or about August 1 of 2003[,] the Defendant[,] Dwaine L. Wright[,] was convicted in a [c]ourt of a crime punishable by a term of imprisonment exceeding one year and is prohibited from possessing a firearm that has moved in or affected commerce.

(Doc. #96 at 19; *see also* Doc. #45 at ¶2). There is <u>no</u> indication in the record that

trial counsel stipulated to the <u>multiple</u> convictions necessary for Wright to be subject to the "armed career offender" enhancement imposed by the trial court as part of Wright's sentence. (*See* Doc. #128).

For all of the foregoing reasons, Wright's ineffective assistance of trial counsel claim based upon trial counsel's stipulation to certain elements of the offense is not well taken.

*b) Failure to present corroborative evidence re Chambers' possession of gun*

Wright also contends that his trial attorney performed deficiently "when he failed to call three (3) key witnesses" with regard to ownership of the gun at issue. (Doc. #145 at 8). Despite that initial reference to "three" uncalled witnesses, Wright later appears to contend that once Chambers refused to testify, Wright's trial counsel should have presented the testimony of two investigators to whom Chambers allegedly had admitted that he, not Wright, had possessed the gun in question. (Doc. #145 at 8; Doc. #154 at 5-7).[4] The United States counters that those witnesses' testimony would have been cumulative of Chambers' affidavit about the gun that was read to the jury, and that failure to present cumulative evidence does not amount to ineffective assistance of counsel.

---

[4]Contrary to Wright's contentions, Anderson's affidavit indicates that the potential witnesses actually were <u>one</u> investigator, plus an intern from the Federal Public Defender's office who had been present when Anderson interviewed Chambers. (Doc. #152, Exh. 1 at ¶¶ 7, 9). Such witnesses' precise identities, however, are irrelevant to the issue at hand.

(Doc. #152 at 3-4). Wright's reply urges that additional corroborative evidence may have made Chambers' affidavit appear more credible. (Doc. #154 at 5, 6).

"The failure to . . . call a particular witness may constitute ineffective assistance in violation of the Sixth Amendment." *Newland v. United States*, No. 2:08-cv-472, 2010 WL 1031126, at *7 (S.D. Ohio Mar. 17, 2010) (Kemp, M.J.) (citing *Clinkscale v. Carter*, 375 F.3d 430, 433 (6th Cir. 2004)). However, the failure to present evidence that is "merely cumulative" of other evidence already presented "does not rise to the level of a constitutional violation." *Getsy v. Mitchell*, 495 F.3d 295, 313 (6th Cir. 2007) (*en banc*), *cert. denied*, 552 U.S. 1244 (2008). "Evidence is cumulative when it supports a fact already established by existing evidence . . ., adds very little to the probative force of the other evidence in the case . . ., is merely a repetition of previous testimony . . ., or – in the case of undisclosed impeachment evidence – when the witness has already been sufficiently impeached at trial . . ." *Brown v. Smith*, 551 F.3d 424, 433-34 (6th Cir. 2008) (citations omitted). Evidence is <u>not</u> cumulative, however, if it addresses a matter that was "far from established," but rather "was <u>the</u> issue in the case." *Stewart v. Wolfenbarger*, 468 F.3d 338, 358 (6th Cir. 2006) (emphasis in original). Generally, "the testimony of a second person to corroborate [a d]efendant's version" of relevant events has been viewed not as "cumulative, but rather . . . [as capable of]

critically add[ing] to the strength of the defense's case." *See English v.*
*Romanowski*, 602 F.3d 714, 727 (6th Cir. 2010) (quoting *Washington v. Smith*, 219
F.3d 620, 634 (7th Cir. 2000)); *see also Bigelow v. Williams*, 367 F.3d 562, 574-75 (6th
Cir. 2004) (testimony of witnesses who could have corroborated defendant's alibi
"would have bolstered [the] defense and was anything but cumulative").

The pertinent portions of Chambers' affidavit read to the jury stated as
follows:

> . . . I, Rodney Chambers, was living at 474 South Kilmer
> Street, Dayton, Ohio[,] on August 1 of 2003.
>
> . . . On August 1 of 2003[,] Scott stopped by my house
> about 12:40 p.m.[,] asking me did I want to buy a 380
> handgun[.] Scott came inside the house.
>
> . . . We went to the front bedroom in the house where
> Scott took out a 380 handgun to show me and discuss a
> possible price.
>
> . . . I looked at the gun, pulled out the clip and laid it
> down on the dresser. Period.

(*See* Doc. #98 at 27).

Although Chambers' last-minute refusal to testify posed a rather unique
challenge in Wright's particular case, the broad principles garnered from other
decisions related to an attorney's failure to call witnesses inform this Court's
impression that attorney Anderson did not violate Wright's right to counsel by

failing to have other witnesses testify that Chambers had admitted to them the information contained in the affidavit.  First, giving Wright the benefit of an assumption that both the defense investigator and the Federal Defender's Office intern would have testified that they heard Chambers admit to possessing the gun at issue,[5] this Court concludes that such testimony in essence would be "merely a repetition of [Chambers'] previous testimony," via affidavit, re possessing that gun, and thus would "add[ ] very little to the probative force of the other evidence in the case."  *See Brown*, 551 F.3d at 433-34.  The situation in this case is readily distinguishable from that in *Wolfenbarger*, where the omitted witnesses apparently would have testified to their <u>personal</u> knowledge of the defendant's whereabouts at the time of the crime.  *See* 468 F.3d at 344-45.  Here, however, the defense investigator and intern could have related only their hearsay recollections of Chambers' admission to possessing the gun, as opposed to first-hand accounts of having observed Chambers with the gun in his possession.

The same distinction exists *vis-a-vis Romanowski* and *Bigelow*, *supra*, where the non-testifying witnesses also presumably would have corroborated a

---

[5]No affidavit or other evidence to this effect has been presented, but the Court accords this presumption in Wright's favor to illustrate the futility of an evidentiary hearing as to this issue.

defendant's alibi through their own independent observations. This Court has found <u>no</u> binding decision in which a court deemed a defendant's constitutional rights to have been violated by the omission of a witness able to testify only that some other person had made out-of-court statements consistent with that same person's statements that were admitted into evidence. As Respondent aptly notes, the jury's acceptance or rejection of Chambers' affidavit turned entirely on the jury's assessment of Chambers' credibility (*see* Doc. #152 at 4), and the jury apparently did not find Chambers' admission to possessing the gun to be dispositive of Wright's guilt. Accordingly, the record does not compel a conclusion that two additional witnesses' testimony that Chambers had admitted to possessing the gun would have changed the jury's verdict. *See Strickland*, 466 U.S. at 694.

Second, the Court observes that attorney Anderson has characterized the omission of the additional witnesses' testimony as a product not simply of counsel's choice, but of a trial court ruling. (*See* Doc. #152, Exh. 1 at ¶9). The trial transcript captures extensive discussions about defense counsel's motion to admit other evidence in lieu of Chambers' live testimony, reproduced in pertinent part as follows:

> THE COURT: Okay. We are back on the record. The Court has at this time[,] then, based upon Mr.

-23-

Chambers['] election to assert his Fifth Amendment
Right against self incrimination[,] has excused Mr.
Chambers.  There is a request at this time[,] or a request
and/or motion from counsel for the defense[,] that Mr.
Chambers then be considered unavailable[,] and I am
assuming[,] along with that motion[,] for the Court to
find that Mr. Chambers is unavailable.  Counsel has
other motions and/or request[s] with regard to
proceeding from this point forward.  Mr. Anderson.

**MR. ANDERSON**: Thank you, Your Honor.  Your
Honor[,] at this time **we would request that the Court
allow the inculpatory hearsay statement of Mr.
Chambers to be admitted to the jury in trial of this
matter.**  We are making this request on the basis of
Federal Rule of Evidence 804(B)(3). . .

* * *

. . . There are some [ ] unusual circumstances in this
case.  **Mr. Chamber** [ ] **contacted** [ ] **my office by** way of
**affidavit** in October of 2003 that he had notarized
**which indicated that he in fact was alone at the
residence and that it was he who handled the gun**[,]
**had the gun inside the house on August 1, 2003**.  **We**
then **sent an investigator**, Your Honor, to investigate
Mr. Chambers. And the investigator identified himself
and explained what he was there for.  **And Mr.
Chambers gave a similar statement indicating that Mr.
Wright was not present and that Mr. Chambers was
the one who handled the gun and placed the gun in
the home.**

Your Honor, **after that interview Mr. Chambers on his
own volition contacted the Court**.  I can proffer to the
Court that was not prompted by defense counsel or the
defense team.  Mr. Chambers **submitted another
affidavit** indicating that very similar conduct **as well as**

**a letter explaining** to the Court **that the wrong man was being pinned with the gun**. Since that time, Your Honor, **there ha[ve] been two additional interviews**, one interview **in the Columbus office and when Mr. Chambers met with our legal extern** in preparation for Rodney's testimony, as the Court knows well, under the principle that Mr. Chambers was in fact going to give live testimony before this Court. Indeed[,] Mr. Chambers has switched on a number of occasions. There was really no way to be certain what would happen right up to this morning.

So, Your Honor, **I think** there is sufficient corroborating circumstances that this Court can make the threshold finding [of] admissibility of the statement, and **the statement should come in and the jury should be able to hear through all hearsay witness[es] that Mr. Chambers has in fact indicated he had lived there, he handled the gun and he stashed the gun and my client was not present**.

* * *

THE COURT: I'm going to ask the Government to address the threshold admissibility question . . .

* * *

**MR. BARTLEMAY**: Well Your, Honor we agree with Mr. Anderson that the criteria is the [declarant] must be unavailable. And we concede that [by] invoking his Fifth Amendment right, he has become unavailable to testify . . . And . . . corroborating circumstances must clearly establish the trustworthiness of the statement.

* * *

**Mr. Anderson is proposing to introduce statements**

-25-

**made to his legal extern,** I believe.  Well[,] **these statements were not under oath. There is no showing as to how,** you know, **this interview was conducted. Mr. Anderson has pointed out these prior affidavits. But we have no way of knowing that Rodney Chambers actually wrote them and sent them to the Court or to Mr. Anderson.  We don't know who sent them, where they came from.  Nobody has come in here and said where these prior affidavits came from, other than that they showed up in the mail.**

* * *

**So the position of the Government is** [that there is] **just not sufficient corroborating circumstances to allow these statements in** . . .  **The fact that he made some statement to somebody from the defense counsel's office in preparation for trial is not sufficient to meet that standard.**

THE COURT: Thank you.  Last word.


**MR. ANDERSON**: Just briefly . . .

* * *

One more point with respect to corroborating circumstances.  Judge, I have got here a signed affidavit[,] originally signed affidavit that Mr. Chambers signed that was notarized.  And the notary public, as far as looking at the circumstances surrounding when the statement was made[,] Mr. Chambers was told by the notary public he was making a sworn statement when this was executed.  That the document was in fact executed by Rodney Chambers, with the notary who has signed and stamped it, Your Honor.  So I would think that those are some of the

other corroborating circumstances that the judge can look at as to the statement made. So, **I think clearly any statements Mr. Chambers made to a defense investigator, as well as any signed notarized affidavit that Mr. Chambers professed clearly, b[ear] enough corroboration that this Court can make a threshold admissibility finding**.

* * *

THE COURT: All right. All right, counsel give me a couple of minutes. I'll be back.

(recess.)

(Doc. #98 at 4-14) (emphasis added).

THE COURT: We are back on the record in United States of American versus Dwaine L. Wright[,] case number 3:04 CR 3. The Court, based upon the presentation of counsel[,] finds that Mr. Chambers as a witness proposed to be called by the defense is unavailable due to his exercising of his right of self incrimination under the Fifth Amendment. And the Court finds that pursuant to what has been presented that **the Court is going to afford the opportunity to present limited statements of the witness to present hearsay of Mr. Chamber**[s] . . . The Court does find that there is sufficient indication of [trust]worthiness in that the Court finds that there were two affidavits, one in October 14th of 2003 and July of 2004 -- I'm sorry August of 19th of 2004, which were allegedly submitted to counsel for the public defender and the Court. In between those, there were also interviews by representatives of the Federal Public Defender or July of 2004 April of 2005 and then the interview by representative of the Federal Public Defender on May

24th of 2005.

**The Court[,]** however[,] in allowing the testimony **is going to request that we voir dire the proposed witness that will be presenting this testimony**. And the Court is going to restrict any and all questioning and answering to only those declarations or remarks within the statement that would be individually self inculpatory of Mr. Chambers. And that is pursuant to United States versus Price. The Court does find although it's not the same type of situation or on the same all fours with Price. There was an advisory statement made in the interview by the representative of the Federal Public Defender that indicates that Mr. Chambers didn't have to talk with them. So, therefore the Court finds that that is a form of Miranda warning. And based upon those findings, **the Court is going to allow testimony of the witness, subject to restriction that the Court will have after voir dire of the witnesses questions**.

* * *

**MR. ANDERSON**: Just one point of clarification, Your Honor. **We would lodge an objection. I don't believe that the Court has mentioned whether or not he would allow admissibility of either of the affidavits or redacted portions of the affidavits**[. W]e would lodge an objection on two grounds, [J]udge[.] [O]ne, we believe that [of] all of the statements made this probably has the greatest index of reliability in that it was a sworn statement signed by a notary public, a Chill[i]cothe Correctional Institution notary. Second, we believe, Your Honor, that according to the rules of evidence that affidavits that are signed and notarized fall under the self authentication rule and therefore they should be admissible based on the rules of evidence of authentication.

-28-

Specifically, Judge, Evidence Rule 902[.]8, which says that documents accompanied by a certificate of acknowledg[ ]ment executed in the manner provided by law by a notary public or other authorized officer to take acknowledg[ ]ment, are self authenticating.

* * *

MR. BARTLEMAY: . . . [Y]our Honor, **the Government would first of all want to file an objection to the admitting anything on this under Rule 404(B) from prior statement of Mr. Chambers**. We believe that there haven't been sufficient corroborating circumstances and that the exception to hearsay rule had not been met. In regard to the affidavit, **we believe that the affidavit should not come in**. We don't know where these have come from. We don't know that that is the same Rodney Chambers that did it, that signed these documents. **And to allow both in** when the Government is not going to be allowed to cross examine a piece of paper, **is certainly not fair to the United States**. And both sides are entitled to a fair trial. I think that **to allow both in is certainly cumulative and improper. I don't think that either should come in, but certainly not both**. And that the affidavit[s] themselves should be kept out.

THE COURT: Okay. **Mr. Anderson, you**[ ] **propose to submit the one affidavit**[,] is what[?]

MR. ANDERSON: Your Honor, I have the original affidavit that actually this Court received from Chill[i]cothe Correctional Institution. But that is what I guess I'm trying to do.

THE COURT: **That is what I wish to place into evidence**.

**MR. ANDERSON: Well, Your Honor, I believe I would be entitled to do both.**

**THE COURT: No.** I understand. I understand that.

MR. ANDERSON: That is the only affidavit that I have got the original copy of, yes.

**THE COURT**: What I'd like to do at least make a copy of that or have a copy of that affidavit marked for the record and placed into the record as an exhibit for purposes of this ruling. The Court is not going to allow the affidavit. And the Court would give counsel a few minutes to – I think what we may do if counsel can compile a list of questions that you are going to ask and let counsel for the Government see it. And as soon as you get it done the Court will review it. All right. That [ ] will be all.

(Court recessed )

* * *

**THE COURT**: Thank you. Be seated. We are back on the record outside the presence of the jury. **It's my understanding, Mr. Anderson, on behalf of the Defendant you are proposing to proceed with the affidavit as a self authenticating document**, a form of hearsay based upon the Court's findings that Mr. Chambers is unavailable.

**MR. ANDERSON: That's correct, Your Honor**.

THE COURT: Mr. Bartlemay.

MR. BARTLEMAY: Other than renewing our objection to the entire admission, Your Honor, we are fine with it.

*-30-*

> **THE COURT**: All right. **The Court has reviewed the affidavit and has provided counsel with highlighted versions of the affidavit**. The highlighted portion of those affidavits the Court finds would not be admissible pursuant to it[ ]s ruling and would afford, **based upon the understanding that no other testimony or document which would reiterate this testimony or these statements is going to be offered. So therefore the Court would be allowing a reading of the statement by Mr. Chambers to be placed before the jury**, specifically the first paragraph and then sentences number 1, 2, 5, 6 and 7.

> **MR. ANDERSON**: . . . **The defense would lodge an objection and submit to the Court that we believe to enter the entire affidavit in its entirety should be admitted**. We would like our objection noted for the record.

> THE COURT: Objection will be so noted, as well as the Government's objection to reading the portions that the Court is going to allow to be read.

> MR. BARTLEMAY: Correct.

(*See* Doc. #98 at 15-21) (emphasis added).

The foregoing excerpts illustrate the apparent contentiousness of the issue surrounding the introduction of Chambers' affidavit(s) versus the testimony of witnesses who heard Chambers' statements regarding possession of the subject gun. Although attorney Anderson clearly articulated his desire to present <u>both</u> the affidavits <u>and</u> such testimony, the United States objected to that request, suggesting that admitting both would be "cumulative and improper," and the

trial judge declined to allow both. (*See* Doc. #98 at 19). As such, the record confirms not only that Anderson advocated vigorously for admission of the most expansive range of exculpatory evidence possible on this issue, but also that the testimony of the two witnesses whom Wright complains should have be called by attorney Anderson was excluded pursuant to the district court's directive, not due to a perceived oversight by trial counsel. Accordingly, the lack of such trial testimony will not support a claim for ineffective assistance of counsel. *See Wolfenbarger*, 468 F.3d at 355 n.5 (trial court's exclusion of two of three alibi witnesses was "an issue separate from whether [defense counsel] provided ineffective assistance of counsel.").

Finally, given the United States' presentation of compelling evidence that personal items belonging to Wright were in the bedroom where the gun was found and that Wright's fingerprint was on the gun, additional evidence that Chambers admitted to having handled and possessed that gun seems unlikely to have dissuaded the jury from finding that Wright still was guilty of possessing a firearm. As such, trial counsel cannot be deemed to have provided deficient representation by failing to introduce the investigator's and/or the intern's cumulative testimony that Chambers claimed responsibility for the gun's presence. *See Manley v. Ross Correctional Inst.*, 314 F. App'x 776, 786 (6th Cir. 2008)

(even trial counsel's "substandard performance" re witness selection did not prejudice defendant's case in light of overwhelming evidence of guilt, defeating ineffective assistance of counsel claim).

### c) Failure to present evidence of Wright's mental disease

Relative to his contention that his trial counsel should have investigated and presented evidence of Wright's "Mental Disease" as a possible defense to the charge against him (Doc. #145 at 5), Wright's affidavit avers that "records of [his] Mental Disorder were readily available to Mr. Anderson . . . but [Anderson] ignored [that evidence] intentionally." (Doc. #145, Exh. 1 at 1). Wright suggests that he is entitled to an evidentiary hearing "to determine not only if an evaluation of [his] mental health issues should have been performed," but also if "the outcome would have been different" had support for such a defense been offered at trial. (Doc. #154 at 14). The Court does not agree.

Respondent argues convincingly that diminished capacity is not a valid defense to a charge under 18 U.S.C. § 922(g)(1), which requires only a "general intent" to commit the crime. (Doc. #152 at 6); *see United States v. Willis*, 187 F.3d 639 [table], 1999 WL 591440 (6th Cir.), *cert. denied*, 528 U.S. 1032 (1999); *United States v. Bennett*, 975 F.2d 305, 308 (6th Cir. 1992). Wright's attempt to distinguish *Bennett* because it "dealt with voluntary intoxication" rather than a mental

disease or disorder (Doc. #154 at 11) is unavailing. In *Willis*, also involving a charge under 18 U.S.C. § 922(g)(1), the Sixth Circuit affirmed the district court's exclusion of expert testimony about the defendant's paranoid personality disorder, reiterating its prior holding "that diminished capacity evidence . . . may be used only to negate the mens rea of a specific intent crime." 1999 WL 591440, at *6 (citing *United States v. Gonyea*, 140 F.3d 649, 650 (6th Cir. 1998)). Additionally, other federal courts have recognized that "mental conditions or defects would rarely, if ever, negate a general intent requirement, given that general intent demands only proof of knowledge with respect to the *actus reus* of the crime." *United States v. Ramirez*, 495 F. Supp.2d 92, 112 (D. Me. 2007); *see also United States v. Santos-Bueno*, No. 04-40023-FDS, 2006 WL 240060, at **4-5 (D. Mass. Jan. 5, 2006) (noting that many appellate courts have held "that expert testimony concerning a defendant's impaired mental capacity is admissible only to defeat the mental state requirement of a specific intent crime"). Accordingly, any evidence that trial counsel might have developed regarding Wright's alleged mental disease would not have been admissible to negate the general intent necessary to commit the charged offense.

Also persuasive is Respondent's observation that a diminished capacity defense is inconsistent with Wright's position that he actually never possessed

the gun in question.  (Doc. #152 at 6).  Even more compelling, however, is the fact that after evidence regarding Wright's purported mental disorder <u>was</u> developed and presented by Wright's subsequent attorney in an effort to mitigate Wright's sentence (*see, e.g.*, Doc. ##106, 107, 108, 109, 110, 115, 118), the district court found that Wright's mental condition did not warrant a downward departure in his sentence.  (Doc. #128 at 2).  Sufficient evidence regarding Wright's alleged mental deficiencies thus is available for the Court to conclude, without an additional evidentiary hearing for purposes of Wright's Section 2255 motion, that no reasonable basis exists to assume that earlier development of that same mental health evidence by Wright's trial attorney would have substantiated a viable affirmative defense to his felon-in-possession offense.

For all of the foregoing reasons, Wright's claim of ineffective assistance of trial counsel on this basis is without merit.

### d)  *Failure to present expert re fingerprint evidence*

Wright also contends that trial counsel Anderson provided constitutionally deficient representation when he "failed to present exculpatory fingerprint evidence and expert[ ]testimony."  (Doc. #145 at 5).  Elaborating on that contention, Wright's affidavit avers that Anderson "failed to introduce the fact, or challenge the fact, that my fingerprints were not found on the gun, as falsely

proclaimed by the government, and failed to bring in the Fingerprint Expert who made this determination as a witness." (Doc. #145, Exh. 1 at 2).  In his reply memorandum, Wright identifies the "expert" referenced in his Section 2255 motion as "Mr. Charles Conner[,] the fingerprint expert . . . Anderson retained." (Doc. #154 at 18).  Claiming in the body of his reply memorandum that recordings of his conversations with Anderson would reveal Anderson telling Wright "that Mr. Conner said that [Wright's] fingerprints were not on the gun," Wright then continues by questioning whether "this Charles Conners [sic] person actually existed, or was a figment of [Anderson's] imagination." (*Id.* at 18-19).

Offered in support of Respondent's opposing memorandum, Anderson's affidavit attests that "Charles Conner" <u>did</u> exist, and was "retained [as] an independent fingerprint expert" by the Federal Public Defender's office "to examine the print recovered from the firearm and to conduct his own comparison with [Wright's] fingerprints on file." (Doc. #152, Exh. 1 at ¶5). Anderson's sworn affidavit continues:

> [Conner's] conclusion supported that of the government's expert and he indicated he would not be helpful.  I reviewed these findings with Mr. Wright well in advance of trial.

(*Id.*).

As should be obvious, where an omitted witness's testimony "would have

served to inculpate, rather than exculpate," a defendant, trial counsel was not
ineffective for failing to procure that prejudicial testimony. *Davis v. Booker*, 589
F.3d 302, 309 (6th Cir. 2009), *cert. denied*, ___ U.S. ___, 131 S. Ct. 92 (2010). Here, as
in *Davis*, the critical issue is whether credible evidence exists as to what that
proposed witness's testimony would have been. *See id.* at 307-09. In other words,
to establish ineffective assistance of counsel on this basis, Wright must show that,
had Conner testified, "the result of his trial would have been different with a
'probability sufficient to undermine the confidence in the outcome.'" *Id.* at 307
(citing *Avery v. Prelesnik*, 548 F.3d 434, 438 (6th Cir. 2008), *Strickland*, 466 U.S. at
694). Wright has not met that burden.

Significantly, although Wright has filed sworn affidavits as to other factual
assertions made within his motions (*see* Doc. #145 at Exh. 1),[6] no such affidavit
has been proffered as to his reply's charge that Anderson told Wright that
Conner said "Wright's fingerprints were not on the gun." (Doc. #154 at 18).
Further, although Wright's reply refers to "a hereto attached Exhibit 9 . . . as
proof of the above statement" (*id.*), review of the attachment to Wright's reply
labeled "Exhibit 9" reveals only correspondence and other filings related to

---

[6]The Court also notes for the record that at least one factual averment within Wright's
sworn affidavits has proven to be false. *See* the discussion, *infra*, re Wright's averment that
appellate counsel Adamo "refused to . . . even contact me during my Appeal." (Doc. #145, Exh.
1 at 2).

Wright's <u>request</u> for recordings of his telephone calls while incarcerated, none of which constitute "proof" as to the <u>content</u> of any such telephone conversations. (*See* Doc. #154, Exh. 9).  As such, there is <u>no</u> competent "evidence" before the Court suggesting that Charles Conner – or any other fingerprint expert – would have refuted the prosecution's evidence that Wright's fingerprint was found on the gun in question.[7]

Moreover, counsel's failure to call a fingerprint expert to challenge the prosecution's findings is not indicative of deficient performance where "the petitioner's attorney likely concluded that his challenges would have been futile."  *Katschor v. Grayson*, 9 F.3d 108 [table], 1993 WL 438636, at *4 (6th Cir. 1993), *cert. denied*, 510 U.S. 1123 (1994).  In *United States v. Holt*, 85 F.3d 629 [table], 1996 WL 262466, at *9 (6th Cir.), *cert. denied*, 519 U.S. 906 (1996), the Sixth Circuit rejected the petitioner's ineffective assistance counsel of claim based on his trial counsel's failure even to <u>hire</u> a fingerprint expert, finding that the petitioner could not "show a reasonable probability that a different result would have obtained at trial."  In so holding, that Court cited with approval *Hernandez v. Wainwright*, 634 F. Supp. 241, 248 (S.D. Fla. 1986), *aff'd*, 813 F.2d 409 (11th Cir.

---

[7]Indeed, aside from the fact that the unsworn allegations of Wright's reply are not an acceptable form of evidence, the Court finds untenable the suggestion that attorney Anderson had secured a fingerprint expert prepared to testify that the fingerprint on the gun was not Wright's, yet inexplicably declined to call that expert as a witness on his client's behalf.

1987), where the court rejected a similar claim because it "required unguided speculation into the value of omitted testimony by hypothetical witnesses." *Holt*, 1996 WL 262466, at *9.

Here, the only suggestion that a fingerprint expert might have aided in Wright's defense is Wright's own speculative and wholly unsubstantiated assertion that Charles Conner – a proposed witness in whose very existence Wright professes some disbelief (Doc. #154 at 19) – would have testified that the fingerprint on the subject gun was not Wright's. (*Id.* at 18-19). That speculation is undercut by Anderson's sworn affidavit attesting that Conner concurred with the government witness's opinion regarding that fingerprint. (Doc. #152, Exh. 1 at ¶5). This Court has no basis for assuming that some other, unknown, hypothetical fingerprint expert might have testified in the manner that Wright proposes, nor is the Court required to engage in such "unguided speculation." *See Holt*, 1996 WL 262466, at *9; *Hernandez*, 634 F. Supp. at 248.

The trial transcript demonstrates that in the absence of expert testimony to dispute the presence of Wright's fingerprint on the subject gun, trial counsel instead concentrated on the government's inability to establish <u>when</u> that fingerprint was placed there. (*See* Doc. #97 at 49-52, 73-88). The fact that such approach did not produce an acquittal does not amount to ineffective assistance

of counsel. "In assessing deficient performance, reviewing courts must take care to avoid 'second-guessing' strategic decisions that failed to bear fruit." *Lundgren v. Mitchell*, 440 F.3d 754, 770 (6th Cir. 2006) (citing *Strickland*, 466 U.S. at 689). Because Wright's trial attorney competently responded to the United States' fingerprint evidence given the means reasonably available to him, his performance as to that issue cannot be deemed deficient on this record.

     *e)*  *Failure to adequately advise Wright with respect to plea*

  As the last remaining element of his ineffective assistance of counsel claim regarding his trial attorney, Wright maintains that Anderson "failed to assist [Wright] in obtaining a Plea Agreement." (Doc. #145 at 5). Wright's affidavit further attests "that I wanted to plead guilty and accept" a 10-year sentence offered by the government in exchange for a plea, but "Anderson ignored me." (Doc. #145, Exh. 1 at 1).

  As Wright himself acknowledges, no formal proposed plea agreement conveyed by the United States to Wright appears on the record in this matter. (*See* Doc. #154 at 9). Respondent, however, implicitly concedes that the government offered Wright a 10-year sentence in exchange for a guilty plea (Doc. #152 at 5), and attorney Anderson's affidavit fully corroborates Wright's assertion to that effect, stating that, prior to trial, the government "offered to

allow [Wright] to plead guilty to the charge of being a felon in possession of a firearm" without "be[ing] sentenced as an Armed Career Criminal," meaning that Wright "would only be subject to [a] statutory maximum of ten years imprisonment." (Doc. #152, Exh. 1 at ¶6). Instead, following the jury's guilty verdict, Wright <u>was</u> determined to be an Armed Career Criminal (Doc. #128), and was sentenced to a term of 220 months imprisonment. (Doc. ##125, 126).

Respondent sets forth two arguments as to why Wright's "claim on this basis must fail": 1) that "Anderson did obtain and communicate a plea offer of ten years" to Wright, who "chose to reject it," and 2) that "the plea offer of ten years was a legal nullity," because as an Armed Career Criminal, Wright "had to serve at least fifteen years by law." (Doc. #152 at 5). Unfortunately for Respondent, however, neither of those arguments is dispositive of this aspect of Wright's ineffective assistance of counsel claim on the record now before this Court.

First, in direct contradiction of Respondent's assertion that Wright was subject to a mandatory minimum sentence of 15 years (*see id.*) is Anderson's affidavit, indicating that the United States' 10-year plea offer to Wright included an agreement "that the government would not seek to prove the requisite prior convictions to support" an Armed Career Criminal enhancement. (Doc. #152,

*-41-*

Exh. 1 at ¶6). Respondent's suggestion that the United States lacks discretion to waive such an enhancement (Doc. #152 at 5) thus is controverted by its <u>own</u> submission of Anderson's sworn affidavit, attesting that as a matter of practice, the United States in fact <u>does</u> choose not to pursue such enhancements in some cases.[8] The Court therefore cannot accept the United States' "lack of discretion" argument to be a settled matter of law.

Second, Anderson's sworn statement that he "strongly recommended" that Wright "take the government's offer" but Wright "chose to go to trial" against counsel's advice (Doc. #152, Exh. 1 at ¶6) is in direct conflict with Wright's sworn affidavit stating that although he "wanted to plead guilty and accept" the government's 10-year sentence offer, "Anderson ignored" Wright's wishes. (Doc. #145, Exh. 1 at 1). As such, the existence of a contested issue of fact could not be more clear. Moreover, under *Strickland*, Wright's claim may turn on that factual issue re counsel error, as Wright clearly <u>was</u> prejudiced if his attorney in fact flouted Wright's wish to accept a 10-year sentence offer and thereby subjected Wright to the significantly longer sentence he ultimately received. (*See* Doc. ##125, 126). In light of Section 2255's relatively minimal threshold for entitlement to an evidentiary hearing, *see* 28 U.S.C. § 2255(b) and *Valentine*, 488

---

[8](*See also* Doc. #154 at 7-8, where Wright addresses the government's discretion re Armed Career Criminal enhancements).

F.3d at 333 (court reviewing post-conviction petition "<u>must</u> hold an evidentiary hearing" when significant factual dispute exists) (emphasis added), this Court concludes that an evidentiary hearing is warranted in this case, for the limited purpose of determining the facts surrounding Anderson's communications with Wright regarding any plea agreement proposed by the United States relative to the subject charge under 18 U.S.C. § 922(g)(1).

In conclusion, the Court determines that Wright's ineffective assistance of counsel claim based on the performance of trial attorney Anderson lacks merit and should be dismissed, with the exception of the single narrow issue related to trial counsel's performance with respect to the government's plea offer. The Court finds that an evidentiary hearing is in order before the merits of that issue can be assessed.

### Ineffective Assistance Claim re Sentencing Counsel Crim

Wright's sole basis for claiming that attorney Crim's representation fell below the standard guaranteed by the Sixth Amendment is an alleged conflict of interest stemming from Crim's prior role as the assistant prosecutor who represented Montgomery County, Ohio, on Wright's appeal of one of his earlier state felony convictions.[9] (Doc. #145 at 5); *see also State v. Wright*, No. 6128 (Ohio

---

[9]Three of Wright's earlier convictions were necessary for the district court to apply the "armed career criminal" enhancement against Wright on his federal conviction. (*See* Doc. #128

Ct. App. Apr. 13, 1979), (Doc. #152, Exh. 2 at ¶3).  According to Wright's affidavit, Crim "refused to withdraw and I never signed a waiver of my right to Conflict-Free Representation or a waiver of any kind."  (Doc. #145, Exh. 1 at 2).  In response, the United States focuses on Wright's failure to explain how that alleged conflict impacted Crim's representation of him.  (Doc. #152 at 10-11).

"The guarantee of effective assistance of counsel includes representation which is free of conflicts of interest."  *McNeal v. United States*, 17 F. App'x 258, 261 (6th Cir. 2001) (citing *Strickland*, 466 U.S. at 688).  Ineffective assistance of counsel claims based on <u>actual</u> conflicts of interest "are entitled to a limited presumption of prejudice."  *Id.*; *see Cuyler v. Sullivan*, 446 U.S. 335, 345-50 (1980).  However, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'"  *Strickland*, 466 U.S. at 692 (quoting *Sullivan*, 446 U.S. at 348, 350) ("a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance").  "It is however unsettled whether the *Sullivan* presumption applies in the context of 'successive representation' (where a petitioner alleges ineffective assistance on the basis of his counsel's <u>previous</u> representation of a

---

at 2).

**-44-**

co–defendant or trial witness) as well [as] in the context of simultaneous representation." *Cordell v. United States*, 193 F. App'x 479, 481 (6th Cir. 2006), *cert. denied*, 549 U.S. 1360 (2007) (emphasis added) (citing *Mickens v. Taylor*, 535 U.S. 162, 176 (2002)).

　　　To establish an actual conflict, a defendant "must point to specific instances in the record to suggest an actual conflict or impairment of his interests." *McNeal*, 17 F. App'x at 262 (citing *United States v. Mays*, 77 F.3d 906, 908 (6th Cir. 1996)); *see also Cordell*, 193 F. App'x at 482 (same). "If the conflict is irrelevant or merely hypothetical, there is no violation." *McNeal*, 17 F. App'x at 262 (citing *Mays*, 77 F.3d at 908, and *Kirby v. Dutton*, 831 F.2d 1280, 1282 (6th Cir. 1987) (stating that an actual conflict is established, *e.g.*, where a plausible defense is foreclosed or where joint defendants' interest diverge)).

　　　"[B]reach of an ethical standard does not necessarily make out a denial of a Sixth Amendment guarantee of assistance of counsel." *Nix v. Whiteside*, 475 U.S. 157, 165 (1986); *see also Strickland*, 466 U.S. at 688 ("Prevailing norms of practices reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable [for purposes of evaluating effective assistance of counsel], but they are only guides."); JOHN BURKOFF, CRIMINAL DEFENSE ETHICS: LAW AND LIABILITY, § 7.1 (2d ed. 2010) ("a criminal defendant's [S]ixth

[A]mendment right to effective, conflict-free counsel is not coextensive with a defense attorney's ethical obligation to respond to - and avoid - conflicts") (citing, *inter alia, Nix*, 475 U.S. at 165).

Here, the alleged conflict of interest is an example of "successive" rather than "simultaneous" representation of competing interests. *See Cordell*, 193 F. App'x at 481. Although this "successive representation" is somewhat unique in that Crim previously acted <u>directly</u> adverse to Wright's interests by prosecuting Wright himself, the Court concludes that the applicable principles nonetheless are the same. Wright has pointed to nothing in the record suggesting that attorney Crim acted in any way inconsistent with Wright's interests during the time Crim represented Wright. (*See* Doc. #145). To the contrary, the record amply demonstrates that after Wright was convicted and requested new counsel, and despite Wright's apparent lack of confidence and/or lack of cooperation, Crim zealously and competently represented Wright as to the limited matters at issue for purposes of sentencing, by filing motions, subpoenaing records, attending hearings and developing evidence related to Wright's mental status as a possible mitigating factor (*see* Doc. ##67, 68, 71, 79, 80, 81, 82, 85, 89, 99, 101, 102, 105, 106, 107, 108, 109, 110); objecting to the presentence investigation report (Doc. ##100, 103); preparing sentencing memoranda and exhibits (Doc. ##113,

114, 115, 116, 118, 119, 122, 123); requesting that the district court reconsider its

sentencing decision (*see* Doc. #129); and even acting on Wright's desire to

preserve evidence related to Wright's concerns about Crim's representation. (*See*

Doc. #85). Moreover, although Crim's affidavit attests that he "could not identify

any arguable issues for an appeal" (Doc. #152, Exh. 2 at ¶4), Crim nonetheless

filed a notice of appeal on Wright's behalf (Doc. #131), preserving Wright's

ability to pursue such an appeal.[10]

Absent any objective indicia that the "conflict" of which Wright complains

resulted in an "impairment of his interests," *see McNeal*, 17 F. App'x at 262, such

putative conflict is merely illusory. Wright's additional contention that Assistant

United States Attorney Bartlemay advised attorney Crim to have Wright "sign a

waiver of the Conflict of Interest and/or Conflict-Free Representation" (*see* Doc.

#154, Exh. 1 at 2) does not change that result. Fed. R. Crim. P. 44(c)(1) applies

only to instances of "Joint Representation" not implicated here, so no waiver was

required. *See id.*, Advisory Committee Notes (1979 Amendment); *see also*

*Holloway v. Arkansas*, 435 U.S. 475 (1978). Moreover, even if obtaining a conflict

waiver may have been <u>advisable</u> in accordance with applicable ethical guidelines,

Wright's Sixth Amendment right to effective assistance of counsel "is not

---

[10]Crim's skepticism re any viable grounds for appeal would seem to be somewhat vindicated by that appeal's lack of success. *See Wright*, 332 F. App'x 257; (Doc. #137).

coextensive with a defense attorney's ethical obligation." *See* BURKOFF, CRIMINAL
DEFENSE ETHICS, § 7.1. Under the standard set forth in *Strickland*, Wright
therefore cannot maintain a viable Sixth Amendment claim based on the
representation provided by attorney Crim during Wright's sentencing phase.

**<u>Ineffective Assistance Claim re Appellate Counsel Adamo</u>**

Finally, Wright claims that the attorney appointed to represent him on his
direct appeal to the Sixth Circuit provided ineffective assistance of counsel
because, despite Wright's instructions, attorney Adamo failed to raise
"significant [and] obvious issues" such as the alleged ineffectiveness of trial and
sentencing counsel, and also "failed to communicate" with Wright. (Doc. #145 at
6). More specifically, Wright's affidavit swears that Adamo "refused to consult
or even contact me during my Appeal." (Doc. #145, Exh. 1 at 2).

Respondent counters that appellate counsel's tactical choices do not violate
the Constitution; that any ineffective assistance of counsel claims based on
matters outside the record could not have been raised on direct appeal; and that
some of the factual bases for Wright's claims are otherwise flawed. (Doc. #152 at
11-12). Respondent also produces attorney Adamo's affidavit, referencing "five
letters written to Petitioner" by Adamo during the course of his representation.
(*See* Doc. #152, Exh. #3 at ¶2).

Consistent with Respondent's argument, the United States Supreme Court has recognized that criminal defendants have no constitutional right to have every non-frivolous issue - much less frivolous ones – raised by their counsel on appeal. *See Jones v. Barnes*, 463 U.S. 745, 750-54 (1983). Indeed, "to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy." *Id.* at 754. Following that decision, "it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

In a similar vein, the Sixth Circuit has acknowledged that "[t]actical choices [regarding what issues to pursue on appeal] are properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir.), *cert. denied*, 498 U.S. 1002 (1990). Accordingly, "[c]ounsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008), *cert. denied*, ___ U.S. ___, 130 S. Ct. 113 (2009) (quoting *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004)).

Having already concluded, *supra*, that attorney Crim's representation during the sentencing phase did <u>not</u> deny Wright effective assistance of counsel, this Court likewise concludes that including such a claim as to Crim as part of Wright's direct appeal would <u>not</u> have affected the outcome of that appeal. Attorney Adamo's failure to raise on appeal a claim of ineffective assistance based on attorney Crim's performance thus cannot support an ineffective assistance of counsel claim against attorney Adamo. *See Wilson*, 515 F.3d at 707.

Wright's additional insistence that the appeal Adamo filed should have included an ineffective assistance of counsel claim based on trial attorney Anderson's performance is equally unavailing. Again, this Court previously determined, *supra*, that Wright's ineffective assistance of counsel contentions against Anderson lack merit, with the possible exception of one narrow issue related to the government's plea offer. Especially given that Wright's contentions as to that issue involve matters not apparent on the face of the record – *i.e.*, that Wright, in private conversations with Anderson, indicated his desire "to plead guilty and accept the ten (10) years from the government" but Anderson "ignored me" (Doc. #145, Exh. 2 at 1) – such claim was not amenable to resolution via direct appeal, but instead was more properly addressed through a post-conviction proceeding for collateral relief, such as this Section 2255 motion.

*See, e.g.*, *United States v. Brown*, 332 F.3d 363, 368-69 (6th Cir. 2003) (declining to consider on direct appeal appellant's "fact-intensive" ineffective assistance of trial counsel claim); *United States v. Neuhausser*, 241 F.3d 460, 474 (6th Cir.), *cert. denied*, 534 U.S. 879 (2001) ("Generally, we 'do not consider ineffective assistance of counsel claims on direct appeal, because the record usually is not sufficiently developed to permit proper assessment of such claims.'"). Adamo cannot be deemed to have performed deficiently by failing to include that inapposite claim on direct appeal.

This Court's review of the multiple pages attached to Wright's reply, through which Wright purportedly "instructed" Adamo as to other possible claims that Wright wished to have included in his appeal (*see* Doc. #154, Exh. 5 at 1-38), discloses no other "significant and obvious issue" (*see* Doc. #145, Exh. 1 at 2) likely to have changed the outcome of Wright's appeal. Consisting mainly of cursory summaries of decisions in other cases, many of those pages reference decisions from jurisdictions not binding in this Circuit, and most rely on facts with little or no discernible similarity and/or applicability to the circumstances of Wright's case. (*See* Doc. #154, Exh. 5 at 1-38). As nothing within those documents provides a reasonable basis to "second-guess" what appear to be Adamo's "reasonable professional judgments," *see Jones*, 463 U.S. at 754, Wright's

vague allusions to other "significant and obvious issues" that should have been raised on appeal (*see* Doc. #145, Exh. 1 at 2) will not support his claim of ineffective assistance of appellate counsel.

Lastly, Adamo's alleged "failure to communicate" with Wright also will not sustain an ineffective assistance of counsel claim. Contrary to references in both Respondent's opposing memorandum (Doc. #152 at 12) and attorney Adamo's affidavit (Doc. #152, Exh. 3 at ¶2), copies of the five letters purportedly sent from Adamo to Wright are <u>not</u> attached to Adamo's affidavit as filed in this Court. (*See id.*). That omission, however, is not fatal to Respondent's position. Ironically, copies of <u>three</u> letters from Adamo to Wright <u>are</u> attached as exhibits to <u>Wright's</u> reply memorandum. (*See* Doc. #154, Exh. 5 at pp. 39-42). Those attachments alone belie Wright's sworn assertion that "Adamo refused to . . . even contact me during my Appeal." (Doc. #145, Exh. 1 at 2)

Moreover, Wright's claim on this basis is doomed by his failure to identify any way in which any purported lack of communication impacted the outcome of his appeal. *See Wilson*, 515 F.3d at 707. Having already rejected Wright's contention that the omission on appeal of ineffective assistance claims was itself ineffective assistance, as well as his vague allusions to other "significant and obvious issues" that should have been raised on appeal (*see* Doc. #145, Exh. 1 at

2), this Court has before it no specific contention as to how Wright could have been prejudiced by Adamo's supposed refusal "to consult or even contact" Wright during the course of his appeal.   (Doc. #145, Exh. 1 at 2).  Absent any showing or even credible allegation of prejudice stemming from that alleged omission by appellate counsel, Wright cannot establish that attorney Adamo provided ineffective assistance of counsel.  *See Strickland*, 466 U.S. at 694.

**IT THEREFORE IS RECOMMENDED THAT**:

> Petitioner Dwaine Wright's motion to vacate, set aside or correct sentence (Case No. 3:04cr003, Doc. #145) be DENIED and DISMISSED with prejudice and that Respondent United States' corresponding motion to dismiss (Doc. #152) be GRANTED, EXCEPT as to the allegation of ineffective assistance of trial counsel relative to the United States' plea offer.

**FURTHER, IT IS ORDERED THAT**:

> Counsel be appointed to represent Petitioner as to the narrow issue regarding the allegation of ineffective assistance of trial counsel relative to the United States' plea offer, and that an evidentiary hearing will be held in accordance with 28 U.S.C. § 2255(b) and (g).

May 20, 2011                                  ___s/Sharon L. Ovington_____
                                             Sharon L. Ovington
                                             United States Magistrate Judge

## <u>NOTICE REGARDING OBJECTIONS</u>

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen [14] days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen [17] days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen [14] days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).